## CONTRACTS FOR PUBLIC WORK WHICH ARE ESSENTIALLY NON-COMPETITIVE.

Circuit Court of Cuyahoga County.

STATE OF OHIO, EX REL WILL S. SCOBIE, A TAX-PAYER, V. EDSON A. CASS ET AL.

Decided, October 28, 1910.

*Public Contracts—Construction of the Act Providing for the Building of Court Houses—Tax-payer Not Guilty of Laches in Seeking to Enjoin Public Contract, When—Expenditure by Contractor in Further-ance of Work Not a Defense to an Illegal Contract—Work that is Non-Competitive in Character Need Not be Submitted to Competi-tive Bidding—Section 2338.*

1. A tax-payer is not guilty of laches in bringing suit to enjoin the illegal expenditure of public money, where within a day or two after the execution of the contract complained of with bond for its faithful performance he served notice through his counsel upon the prosecuting attorney of the county to bring such an action, and three days later, when the refusal of the prosecuting attorney to bring such an action was communicated to him, his own suit was filed.

2. Nor is he estopped from bringing such an action because the defend-ants have been to considerable expense in preparing to execute the contract, where the ground of his action is that the contract is illegal for the reason that the defendants are wholly without au-thority to execute it, or having executed it to carry it out.

3. The addition, when it was incorporated into the General Code, of the words "and shall be governed by the provisions of this chapter relating to the erection of public buildings in the county" to the act of March 8, 1906, providing for the appointment of a commis-sion for the building of court houses, is not effectual to limit or restrict the powers of the commission as granted by the original act, where the work of such a commission in building a court house had been carried almost to completion before these words were in-corporated into the original act; but in such a case the work should be completed under the provisions of the act as it originally stood.

4. But should it be assumed that the statute controls in the form in which it now appears in the General Code, it would still be true that the work of interior decoration is so essentially non-competitive in character that the commission is not required to submit it to competitive bidding, where the building has cost more than two

million dollars, and is imposing in appearance, beautiful in design and monumental in character, the walls of which it is proposed to decorate in harmony with the style of the building itself, and thus add to its dignity and beauty, and exhibit the highest esthetic taste of present day culture.

*Smart, Marvin & Ford*, for plaintiff.

*John A. Cline*, Prosecuting Attorney, *W. D. Meals*, Assistant Prosecuting Attorney, and *Hoyt, Dustin & Kelley*, contra.

FILLIUS, J. (of the Seventh Circuit, sitting in place of Marvin, J.); HENRY, J., and WINCH, J., concur.

This case comes into this court on appeal from a judgment rendered in favor of the plaintiff by the court of common pleas of this county.

The plaintiff, a tax-payer of this county, brings this suit to enjoin the defendants, constituting the building commission of Cuyahoga county, and as well the auditor and treasurer respectively of the county, and William F. Behrens from decorating the court house as proposed by a contract made with Behrens, alleging that the building commission is constructing a court house in Cuyahoga county and that it has entire charge thereof by virtue of authority vested in it by law, including the painting and decorating of the interior thereof and the letting of the contract therefor; that the commission has entered into a contract with the defendant, Behrens, for doing the painting and decorating for the agreed sum of ninety thousand dollars; that the contract is illegal and without authority of law, because the commission did not cause full and accurate plans of the painting thus contracted for to be made, nor did it submit the work for such painting to competitive bidding, but wholly failed to give notice thereof by advertising, as required by law for the lowest and best bid therefor and that no invitation whatever for bids for said work was given by the commission; that the contract was made with Behrens without giving anybody an opportunity to examine plans and specifications therefor to bid on the work; that the auditor of said county will issue vouchers to the treasurer of the county for the work to be done under said contract; and that the treasurer will pay

such vouchers, and that the defendant, Behrens, is about to proceed to carry out said contract, and he prays that the defendants and each of them be restrained and enjoined from carrying out or completing the contract for said painting.

To this petition the defendants, composing the building commission, and the auditor and treasurer of Cuyahoga county jointly answer, admitting that the building commission is engaged in the construction of the court house and that it has entire charge of the construction thereof and the right to determine all questions connected therewith, including the interior painting thereof. They admit the execution of the contract with the defendant, Behrens, to paint and decorate the interior of the court house in accordance with plans and specifications adopted by the commission, which work is to be done to the satisfaction of the commission and its architect, and that by the terms of the contract the commission agrees to pay Behrens ninety thousand dollars therefor; that the work to be done and the services to be rendered by Behrens under said contract are of a personal character, involving and requiring an extensive knowledge of decorative art, including the mixing, blending and harmonizing of colors, and they admit that if not restrained the commission will go forward in the execution of this contract, and they deny that the contract is illegal.

The defendant, Behrens, files a separate answer, and after admitting the principal averments of the petition, he in effect denies that there is any illegality in the execution of the contract, and denies that the commission was wanting in power to make the same. He further alleges that the nature and character of the work is such as to demand a high order of artistic skill and taste to paint and decorate the walls of the court house, as required by the terms of his contract, and that the services required of him are in their nature of that personal, skillful and artistic quality as to make them non-competitive in character.

Thus are the issues presented.

The facts, as established by the testimony offered upon the trial of the case, are substantially as follows:

The defendants, Fischer, Eirick and Vail, the county commissioners of this county, together with the defendants, Cass, Higley, Osborn and Smith, appointed by the court of common pleas to act with said board of county commissioners, constitute a building commission, pursuant to an act of the Legislature passed in 1904, to build the court house. Pursuant to the statute authorizing its creation, the commission employed architects, superintendents and others; procured plans, drawings and specifications; invited bids thereon for the construction of the court house, and entered actively upon the work of constructing the court house. For reasons apparently satisfactory to the commission, but not appearing in this record, in the original letting of contract for the construction of the court house, bids were not invited nor contracts made for painting and decorating the interior walls and ceilings thereof. The building itself about the time of the execution of the contract complained of was substantially completed. The only work left to be done was the completion of some parts of the interior finish of the building and the painting and decoration of the walls, and the supplying of the mural paintings intended for various rooms in the building.

The building, to cost upwards of two and a half million dollars, is of magnificent proportions, and artistic design and finish. Built of granite, of the style of the Italian Renaissance, located upon the bluff adjacent to the shore of the lake, it is designed not alone to be an appropriate place for the administration of justice, but a monument to the genius and modern artistic development of the city and county which it adorns, and as well to be one of a group of buildings in process of erection and to be erected in the city of Cleveland and county of Cuyahoga, so placed and constructed about a mall that each shall be in harmony with the others, and together constitute an expression of the highest development of the art of architecture and civic usefulness in this country.

The commission proceeding to complete this structure, thus conceived and designed, employed Charles F. Schweinfurth, a gentlemen of this city, eminent as an architect and as a man possessing a fine artistic sense, not only in the designing of

buildings but in their interior decoration, to prepare plans and specifications for its interior decoration, in keeping in design and artistic finish with the building itself. Without attempting to go into detail, the plans and specifications thus prepared required the interior decoration to be like the building itself of the period of the Italian Renaissance, particularly giving expression to the peculiar quality, style and effect of that period, which found its highest development in one of the greatest artists of that time. The commission adopted the views, plans and specifications of Mr. Schweinfurth, and in addition determined to place upon the interior walls of the building a number of mural paintings to be executed by one or more of the present day masters of mural art, and it was required that the decorating to be done by Mr. Behrens, under his contract, should be in harmony with these mural paintings, so that the whole should have one harmonious, artistic effect, suggestive of the majesty and dignity of the law and its administration. To do the interior decorating thus determined upon and in this manner the commission found that it would require a highly developed professional and artistic skill, involving taste, feeling, harmony, idealism and an aesthetic sense that in fact made the work non-competitive in character. The commission, therefore, did not advertise for bids for the doing of this work, but did make inquiry as to prices therefor, through its representive, Mr. Schweinfurth. Accordingly, acting upon the belief that it had the power to enter into a contract of this character without submitting the work to competitive bidding, it entered into the contract in question with Mr. Behrens to do the work and furnish the material therefor, under plans and specifications as definite as the nature of the work would permit, though leaving much ultimately to the judgment of Mr. Schweinfurth.

The question therefore now for determination is, did the commission in thus making this contract exceed the authority conferred upon it by the statute creating it, and any amendment thereof.

Before undertaking to answer this question, it will be well to dispose of two defenses interposed upon the trial: First,

that the plaintiff has been guilty of such laches that a court of equity ought not to interfere in his behalf; and, second, that he is estopped to claim the interposition of this court by reason of the fact that he delayed bringing his action so long that the defendant Behrens has, in good faith, and relying upon the legality of his contract, made expenditures and incurred obligations on account thereof, amounting to a very large sum of money, to-wit, more than ten thousand dollars.

So far as the question of laches is concerned, it is difficult to see how the plaintiff could reasonably have been more diligent. While it is true the newspapers of the city about August 3d published the fact that the commission had substantially contracted with Mr. Behrens to do this work, yet the contract itself and the bond to be executed concurrent with it were not executed until September 14th, and upon that date, or within a day or two thereafter, the plaintiff made application to counsel and counsel immediately served notice upon the prosecuting attorney of the county to bring this action, and he, after the lapse of two or three days, refused to do so, and the very day that his refusal was communicated to plaintiff's counsel, this suit was begun. It would appear, therefore, that the plaintiff was not guilty of laches. The court would hardly be warranted, in a suit begun on behalf of the tax-payers of the county, to protect their interests against the illegal expenditures of public funds, in finding that the plaintiff was guilty of laches, unless such clearly appeared to be the case.

Neither is the plaintiff estopped to prosecute this action. He claims that the defendants should be enjoined from carrying out this contract because it is illegal, because the defendants are utterly without authority to execute it, or having executed it, to carry it out. If the contract be in fact illegal and without authority of law, then the plaintiff is not estopped, no matter how much money the defendants or any one of them may have expended in its partial execution, from enjoining the further execution of the contract, or the payment thereon of any of the public funds.

Whether, then, the commission had authority to execute the contract in question depends upon what effect is to be given

to the statute and any amendment thereof, under which the commission is acting. This statute is general in its nature and is entitled "an act to provide for a commission for building court houses," and seems to have been an entirely independent act upon that subject. The commission was empowered by the terms of the act with the broadest discretion to determine all questions connected with the building of a court house, and was granted, in the language of the Supreme Court, "every phase of power and duty which is conferred upon the county commissioners and more." The act expressly provided: "said building commission shall, after adopting plans, specifications and estimates, invite bids and award contracts for said court house, and for furnishing heat, light, ventilation and for sewerage of the same, and determine all questions therewith, until said court house shall be completed and accepted by said building commission."

In view of this express power thus conferred upon the commission, and of the decision of the Supreme Court in the case of *McKenzie* v. *State*, 76 Ohio St., 369, there is little doubt that the commission was well within the limitations of its authority in making this contract. But confusion has arisen from the fact that the codifying commission in codifying the statutes embraced in the general code the statute creating the building commission with other sections of the statutes relating to the authority of county commissioners to erect county buildings under Chapter 1, Title 10, relating to public buildings, covering Sections from 2333 to 2366 inclusive, and from the further fact that the codifying commission divided Section 1 of the original act creating the building commission into several sections, and incorporated that part of the statute above quoted in Section 2338 of the General Code, making an addition thereto, so that the whole of Section 2338 now reads, as follows:

"After adopting plans, specifications and estimates, the commission shall invite bids and award contracts for the building and for furnishing, heating, lighting and ventilating it, and for the sewerage thereof. Until the building is completed and accepted by the building commission, it may determine all questions connected therewith, and shall be governed by the pro-

visions of this chapter relating to the erection of public buildings of the county.''

Plaintiff now claims that because the original act creating the building commission is now incorporated in the General Code under one chapter relating to the construction of county buildings, and especially because the original act appears to have been amended, as shown by Section 2338 of the General Code, by adding the words ''and shall be governed by the provisions of this chapter relating to the erection of public buildings of the county,'' the power of the building commission has thereby been limited and restricted, and that it no longer has any discretion with respect to letting contracts, but every contract of whatever kind or nature must be advertised upon plans and specifications for public letting and let to the lowest and best bidder; and that if the decoration of the interior of the court house proposed to be done by the commission, pursuant to the contract made with Behrens, be of a character that can not be submitted to competitive bidding, then the commission and the county which it represents must forego that character of work and must adopt a kind and class of work which can be submitted to such bidding.

If this conclusion must necessarily follow from the addition of the words to the statute above referred to, and now appearing in Section 2338 for the first time, then, of course, there is nothing for this court to do but to allow the prayer of the petition. We, however, do not think the conclusion contended for by the plaintiff, from the change in the statute, necessarily follows. The commission came into existence for the purpose of building the court house. Preliminary to the appointment of four members of the commission by the court of common pleas the commissioners of the county had, under the act, determined to build a court house; had submitted to the electors of the county the question of issuing bonds for that purpose, which had been determined affirmatively by them, and then it was that the building commission was organized, pursuant to the terms of the statute, and the members appointed thereto by the court were to serve until the court house, as contemplated

in the act, was completed. The commission thus created, had but one thing to do, to-wit, to build and complete the court house. The money was provided by the issuing of bonds for that purpose. The members of the commission appointed by the court took an oath and gave bond for the faithful and honest discharge of their duty. In case one of them died before the court house was completed, the judge appointed his successor, and the commission was authorized to employ architects, superintendents and employes, and to adopt plans and specifications and estimates, and invite bids and award contracts for the court house, and for furnishing heat, light and ventilating the same, and for sewerage thereof, and were given authority to determine all questions connected with that work until the court house shall have been completed and accepted by the building commission.

Thus the statute had one purpose—one object. The commission's service was continuous, beginning with its appointment and ending when the court house was completed. It seems clear, thus viewed, that the work of the commission in carrying out the objects and purposes for which it was appointed, and the building of the court house down to its completion, constituted within the meaning of Section 26 of the General Code "a proceeding" and that any amendment of the statute made after that *proceeding* was instituted and carried forward almost to completion, can in no manner affect the powers given that commission in the original act. Suppose, indeed, that the codifying act by some error had repealed the entire act creating the commission and authorizing the erection of the court house, can it be said that if that had been done the commission would have been absolutely without power or authority to proceed at all with the completion of the building, and that it must remain in its unfinished and unusable state? It would seem as though the very purpose and object of Section 26 was to provide against just exactly such contingency, such repeals, and to permit the authority originally granted to be exercised down to the completion of the work which this statute itself originally authorized, and which was begun and largely completed before this amendment was made.

The case of *City of Cincinnati* v. *Davis*, 58 Ohio St., 225, lends substantial support to this view. In that case the proper board of the city adopted a resolution to improve an alley of a certain width. Thereafter, and pending proceedings to improve the alley, the statute was amended, conferring the authority to do this upon another board. The Supreme Court held that such amendment did not work a discontinuance of the proceeding pending before the original board to improve the alley and that the improvement should be prosecuted to completion by the board that adopted the resolution, under favor of Section 79, now Section 26 of the General. Code.

In passing upon the case, Minshall, J., in the opinion says:

"The question then arises whether the assessments are void, because the ordinance to improve adopted June 20, 1893, was adopted by the board of legislation, instead of by the board of administration; or, whether, by the amendment of March 30, 1893, the proceeding did not abate for want of jurisdiction in the board, before which it was commenced, to make it? We think not. The act of March 30, 1893, contained no express provision making it apply to pending proceedings. Hence, as we think, this proceeding was not discontinued thereby, and the board of legislation was authorized under Section 79, Revised Statutes, to proceed with and complete the improvement as it did. This section relates to no particular subject of legislation. It relates to the operation of statutes in general. The section reads as follows:

" 'Whenever a statute is repealed or amended, such repeal or amendment shall in no manner affect pending actions, prosecutions or proceedings, civil or criminal, and where the repeal or amendment relates to the remedy, it shall not affect pending actions, prosecutions, or proceedings, unless so expressed; nor shall any repeal or amendment affect causes of such action, prosecution, or proceeding, existing at the time of such amendment or repeal, unless otherwise expressly provided in the amending or repealing act.'

"The section as first adopted did not contain the second clause as to repeals or amendments affecting the remedy; but as there was a disposition to hold that it did not apply to such changes in the law this clause was inserted, so that a repeal or amendment affecting the remedy should not apply to pending proceedings 'unless so expressed'; so that the amendment of March 30, 1893, does not apply to this case, if it is within the

provisions of the above section, whether it relates to the remedy or not, for the amendment contains no express provision to that effect. There seems to be the same reason for applying the provisions of this section to a pending proceeding for the improvement of a road or street that there is for its application to a pending proceeding in the nature of a suit, where the change in the law simply applies *to the mode of procedure.* In either case it must be assumed that the proceeding was commenced with reference to the provisions of the existing law; and it is neither wise nor just, as general rule, to disappoint the parties in this regard by a change of the law, and, as must frequently happen, after a considerable amount of costs and expenses have been incurred.

"The section announces the permanent policy of the Legislature as to the operation of its statutes; and, where there are, in its opinion, sufficient reasons for a departure from this policy in a particular instance, it has been declared that the departure shall be expressed in the amendatory statute. In so far as *Commissioners* v. *Green,* 40 Ohio St., 318, conflicts with this view, it is not approved. In *Raymond* v. *Cleveland,* 42 Ohio St., 522, a more correct view is taken of a clause similar to the provisions of Section 79, Revised Statutes. There under the Municipal Code of 1869, and its amendments, proceedings had been commenced for the improvement of a street to be paid for by assessments on the property benefited. An assessment was made and set aside by the courts for irregularity. Subsequently, under provisions of the code in force when the proceeding was commenced, a reassessment was made; but the provisions of the code in regard to a reassessment had been previously repealed by the revision of 1878; and it was claimed for this reason that the reassessment was void. The revision, however, contained the following saving clause: 'No suit, prosecution or proceeding shall be in any manner affected by such change, but the same shall stand or proceed as if such change had not been made.' It was argued that this provision related only to proceedings in the nature of actions and the like, and did not extend to the right to make a reassessment authorized only by the law that had been repealed. But Okey, J., in delivering the opinion said: 'We are unwilling to place any such limitation upon the provision. It is remedial and no violence is done to the language by holding that it preserves the right to make this reassessment under the municipal code of 1869.'"

It would seem in view of the foregoing, that if it be conceded that the words added in the General Code to Section 2338 be in

fact an amendment of the statute of a character compelling a different construction than would be given it if the words were not added, then, nevertheless, the amendment would be without effect, because it relates to the work of building this court house, a proceeding, within the meaning of Section 26, long commenced and prosecuted before the amendment was made, and which was in fact made pending the proceeding relative to its completion.

The conclusion therefore necessarily follows that the amendment for which so much is claimed by the plaintiff here is not effectual to limit or restrict the powers of the commission granted by the original act so far as the proceeding relative to this court house is concerned, and that the commission has, with reference to this contract, the same power that it had before that amendment was made, and in view of the conclusions reached by the Supreme Court in the 76th Ohio State, above referred to, we are of opinion that the commission had the power and authority to make this contract in the manner it did make it.

The conclusion necessarily disposes of the case, but we deem it proper to pass upon the other question here raised, namely, whether the interior decoration of this court house provided for in this contract is so essentially non-competitive in character that the commission is not required to submit the work therefor to competitive bidding, assuming that otherwise the statute requires it to do so.

The contention of the plaintiff is that where a statute requires work to be submitted to competitive bidding and a contract to be made only with the lowest and best bidder, that then no construction is permissible which undertakes to read into the statute any exception, and that in such a case the evident design and purpose of the law-making power is to restrict all work to that kind and character which can be in its nature the subject of competitive bidding.

Upon the other hand, the contention is that the purpose of the law is to protect the public against unwise and injudicious contracts resulting from favoritism, dishonesty, and to secure for the public the construction of any public work upon the best terms and to the best advantage and at the lowest possible

cost, and that the only sure way of securing this is by open pub-
lic competition; but it is further contended that while this is
true, it was no part of the purpose of the law-making power
thereby to prevent the public from having those things which
are essentially non-competitive, where they subserve a useful if
not necessary purpose which otherwise could not be obtained, and
that it is not inimical at all to the purpose of these statutes to
limit the public bidding required to those things about which
there may be competition. Naturally the things which are non-
competitive in their nature are few as compared with the num-
ber of things that are competitive. So here. A great public
building is erected at great cost, intended not only for the pres-
ent but many future generations; imposing in appearance,
beautiful in design, monumental in character, whose walls it is
proposed to decorate in harmony with the style and structure
of the building itself, in a manner at once to add to its dignity
and its beauty, exhibiting those elements of taste, feeling and
harmony corresponding to the highest aesthetic taste of present
day culture. This work, we find, is of that character that re-
quires in him who undertakes to do it the idealism and imagina-
tion of an artist, the skill of the painter, the sentiment and
feeling of the poet. That it may be done to harmonize with the
building itself, with the mural paintings proposed to be placed
upon its walls and in the manner herein described, requires
the commission should select the man fitted to do the work and
not to submit the work to any man who might bid for it, wheth-
er he is fitted to do it or not. It seems to us that it is not doing
violence to the intention of the law-makers nor the evils against
which the statute is directed to construe it to be limited to work
that is in its nature competitive and not otherwise.

This court in the case of *State, ex rel,* v. *Mackenzie,* 9th Cir. Ct.
Rep. (N.S.), 105, decided in 1907 this question, arriving at the
same conclusion. In an able opinion by Henry, J., concurred
in by Marvin and Burrows, JJ., it is said that:

"When the contemplated construction is essentially and abso-
lutely non-competitive, because of its artistic nature; or is
strictly monopolistic, because of the function to be performed
thereby is necessarily dependent upon a single means which is

the subject of an exclusive patent, or franchise, or sole source of supply, then the principle of competition is, so far forth, inapplicable.''

Numerous authorities from other states support this conclusion.

While the Supreme Court of our state has nowhere expressly passed upon the question, yet in the case of *Mackenzie* v. *State*, *supra,* Davis, J., in the opinion, speaking with reference to whether requiring public bidding had always worked out the best results or not, says:

''Every man has realized in his own experience that the lowest price does not always secure satisfactory results and that some things which are most desired are not open to competition.''

To us it is obvious that it is most desirable that the interior decoration of this magnificent structure should be in harmony with its original design, and that the plans and specifications and ideas with reference thereto of the architect employed by the commission, Mr. Schweinfurth, should be carried out, and if carried out, will add permanently to the dignity, beauty and character of the structure itself. This, we are convinced, can not be done by submitting the work to competitive bidding, but can only be done by the commission's selecting an artist whose skill, taste and aesthetic sense are of that high order that will enable him to carry out upon the walls of that building the scheme of decoration proposed.

It is claimed, however, that the Supreme Court of this state has, in effect, determined this question otherwise in the case of *State* v. *Yeatman,* 22 Ohio St., 546. In that case the Supreme court held that a contract made by the county commissioners for re-copying plats of the county for use in the auditor's office, the estimated expense of which exceeds five hundred dollars, is void as against the county, unless it be made with the lowest responsible bidder, in accordance with the provisions of the statute. The statute provided that in cases where the estimated expense exceeded $500 contracts should be awarded to the lowest responsible bidder, and Day, J., in passing upon the question, said:

"There is nothing in the character of the work to be contracted for that excludes it from the operation of this section of the statute. If the 'lowest responsible bidder' should not be possessed of the skill requisite to perform the work in a suitable and acceptable manner, he would be under the necessity, as in other cases, of employing those who have the capacity to do the work in a manner that will secure a faithful performance of the contract."

We do not think this is in conflict with the view we have taken of the case at bar. Obviously the copying of plats required merely skill in copying, and it might be added, but ordinary skill at that, and it was with reference to work of that kind that the court was speaking; but in the case at bar the work involves not only skill, but it involves taste, feeling, harmony, sentiment, ideals—indeed, the whole category involved in what is denominated aesthetics. We thus conclude that for this reason also, the contention of the plaintiff in this case is not well taken, and that the commission had power and authority to make the contract which it is sought here to enjoin.

It is therefore ordered that the plaintiff's petition be and it is hereby dismissed at the costs of the plaintiff.